[Civ. No. 13284.   Second Dist., Div. Three.   June 23, 1942.]

LOUIS G. KORT et al., Appellants, v. THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Andrew J. Copp, Jr., for Appellants.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and William Christensen and Bourke Jones, Deputies City Attorney, for Respondents.

SHINN, J.—Plaintiffs appeal from an adverse judgment in an action brought against the city of Los Angeles and others to enjoin them from enforcing the provisions of a general zoning ordinance of the city insofar as it restrains plaintiff Louis G. Kort (hereinafter referred to as plaintiff) from maintaining a sign three feet by three feet having the notation "Public Accountant, Income Tax Service, Notary Public" in front of his dwelling house on a fifty-foot lot at 2437 Crenshaw Boulevard in said city, and from carrying on at said location the business so advertised. Plaintiff maintains an office as an accountant at another location in the city; he lives at the above described address, brings home work in the evening, which he attends to in a room containing ordinary household furniture, a desk, typewriter, and adding machine. He alleges that during the busiest time of the year, between January 1st and March 15th, no more than sixty of his clients come to his residence and that then they come singly and not in groups; he has no assistants or other personnel in his employ at the house. We do not understand from the pleadings or the briefs that the city questions plaintiff's right to do his accounting work at his home, but it is insisted by the city that the ordinance is violated in terms by plaintiff's carrying on the business of accountant upon the premises and by maintaining the sign advertising his business, as an incident thereto, contrary to a provision of section 12.07 of the Zoning Ordinance, which reads: ". . . and no lot or premises shall be used for any purpose, except as hereinafter specifically provided and allowed in this section," there being nothing in the section specifically allowing the business of accounting to be carried on at the location in question.

Crenshaw Boulevard is a main north and south traffic artery in the westerly part of Los Angeles. Plaintiff's property is located in a long block between Washington Boulevard

and Adams Street, some 772 feet northerly from Adams and considerably more than twice that distance southerly from Washington; at those intersections there are business centers upon the corner lots and upon the intersecting streets, the one at Adams being the more extensive. The original ordinances zoning the city were adopted in 1921 and 1922 and were revised and placed in the Municipal Code in 1936, at a time subsequent to the expiration of building restrictions which had limited the use of property in the block, excepting the corner lots, to residential purposes.

Plaintiff's property is in zone R-4, in which, under the ordinance, property may be improved and used for single-family dwellings, private garages, hotels, apartments, rooming and boarding houses, private clubs, public dining rooms and restaurants in hotel buildings, with certain limitations, together with the usual "accessories" in connection with hotels and private clubs, including necessary garage accommodations for both private and other residential properties; also permitted are fraternity and sorority houses, churches, public and quasi public education institutions, with their usual "accessories" and garage accommodations. It is lawful to have in zone R-4 the office of a minister of religion, physician, dentist or healer, provided the room used as an office constitutes an integral part of the dwelling or apartment used as such person's home and contains complete housekeeping facilities; provided also that such office is not used for the conduct of the general practice of medicine, surgery, dentistry or healing other than as a religious vocation, although it may be used for emergency treatment with no assistants employed. The offices which are permitted may lawfully be advertised by a sign or placard having a surface area of not more than one and one-half square feet. It is lawful to use premises in said zone for farming, the keeping of domestic livestock, and the raising of poultry, rabbits, bees, pigeons, "or other similar enterprises which in the opinion of the Board [of Planning Commissioners] as evidenced by a resolution of record are no more objectionable to the particular community than the enterprises above enumerated, provided the same is not in violation of any ordinance, law or any section of this Code." (Mun. Code 12.04.) Dairies, stockyards, cattle feeding yards, horse corrals or stables except for private use, hog or goat ranches, hog or

goat raising establishments or dog or cat breeding establishments are forbidden.

It is contended that the ordinance deprives plaintiff of property without due process of law and is therefore void. The several zones into which the city has been divided may be roughly described as providing for the following uses: (1) single-family dwellings; (2) the uses permitted in zone 1 and also multiple dwellings, including duplexes and apartment houses; (3) the uses permitted in zone 2 and also fraternity houses, sorority houses, rooming and boarding houses; (4) the uses permitted in zone 3 and also hotels and private clubs with private dining rooms and restaurants in hotels having more than twenty guest rooms and with certain other restrictions; (5) in addition to the uses provided in zone 4, stores, shops and businesses, professional and business offices; (6) in addition to the uses allowed in zone 5, motion picture theaters, hospitals, sanatariums, and similar uses; (7) in addition to the uses allowed in zone 6, automobile repair shops, dancing academies, night clubs, laundries, plumbing, etc.; (8) all other uses, with certain specified exceptions, usually classified as nuisances or quasi nuisances; and (9) all uses not prohibited by law or ordinance.

It is not questioned that the zoning of the entire city followed a comprehensive, fairly conceived and carefully studied plan or that it is generally a valid enactment. The power of municipalities to enact such ordinances is too well understood to require repetition of general principles.

The argument against the validity of the ordinance proceeds upon several grounds, (1) that the uses which plaintiff is making of his property for the conduct of his business of accountancy and the advertising thereof by means of a sign in no way interferes with, and that their prohibition by the ordinance does not tend in any way to promote, the public health, morals, safety or general welfare; (2) that the ordinance unfairly discriminates against the business of public accountancy, which is prohibited while other businesses are permitted in the district; (3) that if the restrictions upon the use of plaintiff's property for business purposes were valid in the beginning they have become invalid because of changed conditions which have transformed the property in the district from residential to business property.

It may be conceded that plaintiff's business is not one the conduct of which is subject to regulation by the city in the exercise of the police power, and that the ordinance would

be invalid if its only purpose was to prohibit the practice of public accountancy in certain districts of the city, while permitting it in others. But the ordinance cannot be dissected and considered as a multitude of ordinances having no relation to the general scheme of zoning. The authority which the city exercises in adopting a general zoning ordinance is not the same one that it exercises in placing restrictions upon certain types of business because they are actual or potential nuisances, the latter power being one which was commonly used, before city planning became an established practice, in confining to certain districts businesses which were in themselves detrimental to the public safety, morals, health or general welfare. ■ It is not a ground of invalidity of the ordinance that plaintiff's business is, as the court found, "lawful, innocent, inoffensive and dignified," for if restrictions on business uses of property could be invalidated upon that ground there could be no such thing as comprehensive city planning. (*Rehfeld* v. *San Francisco*, (1933) 218 Cal. 83, 85 [21 P. (2d) 419]; *Jones* v. *City of Los Angeles*, (1930) 211 Cal. 304, 309 [295 Pac. 14]; *Zahn* v. *Board of Public Works*, (1925) 195 Cal. 497 [234 Pac. 388]; 274 U. S. 325 [47 S. Ct. 594, 71 L. Ed. 1074]; see also 37 Harv. L. Rev. 834, 850.)

Plaintiff points out that the businesses of operating hotels and private clubs with restaurants and dining rooms therein under certain conditions, apartment houses, rooming and boarding houses, with signs advertising the same, are permitted, and contends that this constitutes an unlawful discrimination against his business. ■ There is a discrimination, of course, but it is one that is not unreasonable and it does not invalidate the ordinance. The district is zoned for residential income uses and all of the businesses enumerated are identified with residential uses of the property. We can conceive of no valid reason why it is not just as reasonable to exclude nonresidential business uses of property from a residential income district as it would be to exclude hotels, apartment houses, rooming and boarding houses from a single-family residential district. Residential income use is commonly recognized as a proper classification, as distinguished from private residential, business and manufacturing uses. It is therefore permissible to exclude from a residential income district businesses unidentified with residential uses, while permitting therein hotel, apartment house, rooming and boarding house businesses. (*Zahn* v. *Board of Public*

*Works, supra; Feraut* v. *City of Sacramento,* (1928) 204 Cal. 687 [269 Pac. 537] ; *Acker* v. *Baldwin,* (1941) 18 Cal. (2d) 341 [115 P. (2d) 455] ; *Reynolds* v. *Barrett,* (1938) 12 Cal. (2d) 244 [83 P. (2d) 29].)

The ordinance in its present form might be construed as allowing poultry, rabbits, pigeons, etc., to be kept and raised as a business but it does not appear that there are any such businesses in the district or that they have not been prohibited by other ordinances of the city. Under the circumstances there is no need to discuss these provisions of the ordinance as might have been necessary if it had been shown that those businesses had grown up in the neighborhood.

■ Plaintiff's next contention is that by means of changed conditions the property in the block between Washington and Adams has become unfit for residential uses and is suitable only for business uses. The court found against this contention, the finding being "that the character of plaintiff's said real property is now and for many years last past has been residential." There was an abundance of evidence that the property in the block is valuable as residential income property, that there are some thirteen apartment houses in the block, many rooming and boarding houses, and that the same are well tenanted. As already stated, there is a somewhat extensive business district at Crenshaw and Adams and a less extensive one at Washington and Crenshaw. These alone do not destroy the residential character of the remainder of the property in this long block. There is nothing unreasonable or unsound in the mere zoning of one side of a street for business and the other side for residential uses or in the allowance of small business communities where the surrounding property remains zoned for residential uses, provided such zoning is a part of a comprehensive and reasonable scheme. (See cases cited above.) We think plaintiff's evidence wholly failed to sustain the allegations of the complaint that plaintiff's property, while originally residential in character, has become essentially business in character.

■ Certain evidence offered by plaintiff to prove that changed conditions have transformed his and surrounding property into business property was excluded, and the rulings are assigned as error. Plaintiff offered to prove that on Crenshaw between Wilshire Boulevard on the north and Jefferson Boulevard on the south, outside of the block between Washington and Adams, for a distance of several miles there are located some 120 separate businesses. Photographs of a great

many business buildings and centers in the same area were offered in evidence. The offered evidence was excluded, and the rulings are assigned as error. In the original zoning there were only four intersections zoned for business. At each of three intersections, Pico Boulevard, Washington Boulevard, and Adams Street, the four corner lots were zoned for commercial uses. Later a key lot south of Washington on Crenshaw was rezoned for business. All of the other business uses to the north of Washington and south of Adams came into being through amendments of the ordinance or through special zone variances. There would have been no impropriety in the court's considering the offered evidence. Where it is claimed that the character of a given locality has been changed through the gradual growth or development of a street or district it would seem proper to allow a wide latitude of proof in order that the court be as fully informed as possible as to the extent and significance of such changed conditions. But we think the offered evidence was without evidentiary value in the present case, that the rulings were justifiable upon that ground and were not harmful to plaintiff's case. Conditions as they exist in the block between Washington and Adams were fully proved and, as we have seen, the court found that the property in that block still remains suitable and valuable for residential uses. If this is true despite the business centers at the intersections of Washington and Adams, it is difficult to see how the existence of other businesses and business centers more remotely located have had or could have had any different or greater effect upon plaintiff's property. The most that can be said in favor of plaintiff's argument in connection with the offered evidence is that there is a prospective or threatened conversion of his property and that which surrounds it, from residential to business property. This of course may take place or, upon the other hand, the expansion of business uses may reach the saturation point and lie dormant for a long period of time. As a matter of fact, property north of Washington and south of Adams may be more suitable for business than for residential income uses, and plaintiff's property yet maintain the latter character, and we think the court's finding as to the suitability of plaintiff's property for residential uses, based upon sufficient evidence, is conclusive as to that fact. As we have pointed out, there would be no unlawful discrimination under those circumstances in the refusal to

rezone plaintiff's property for business uses. Had the excluded evidence been received plaintiff's case would not have been changed in any material respect.

There is another feature of the case which may well have influenced the decision of the trial court and which should be mentioned, although it has no bearing upon the conclusions which we have stated. In 1938, while plaintiff was a tenant of the premises in question, he caused the owner thereof to apply to the city authorities for a zone variance which would have made possible the practice of his profession upon the premises. After a hearing in due course before the Board of City Planning Commissioners the application was denied and an appeal was taken to the City Council, where the action of the board was affirmed. Thereafter plaintiff purchased the property and subsequent to his purchase filed another application for zone variance, which met the same fate as the first one. All of this was established at the trial, with the result that the trial court was called upon to decide questions of the alleged unfair and discriminatory operation of the ordinance insofar as it affects plaintiff's property under present conditions, which had but recently been fully considered by the city authorities. ■ It is a settled rule, as stated in the Zahn case, (71 L. Ed.) at page 1076, that under such circumstances, where it is fairly debatable whether the determination by city authorities was an unreasonable, arbitrary or unequal exercise of power, the court will not substitute its judgment for that of the legislative body. See also *Vincent Pet. Corp.* v. *Culver City,* (1941) 43 Cal. App. (2d) 511, 516, 517 [111 P. (2d) 433]; *Sunny Slope Water Co.* v. *City of Pasadena,* (1934) 1 Cal. (2d) 87, 93, 94 [33 P. (2d) 672], and cases cited therein. Upon the facts, as found by the trial court, which are controlling as to the present character of plaintiff's property, the limitations upon the use of the property are not unreasonable or oppressive.

■ Plaintiff sought to prove that one of the "accessories" of a hotel, apartment house or private club is the services of a public accountant, together with the maintenance of a sign advertising the availability of such services, and that his business is therefore countenanced by the ordinance. This evidence was excluded upon objection and the ruling is assigned as error. We think the evidence was properly excluded. While the usual accessories in connection with hotels, apartments and other buildings are specifically permitted, the ordinance defines "accessories" as "any one-story building

or structure, or a portion of any main building, the use and maintenance of which is incidental to the use and maintenance of the main building and which is located on the same lot'' and in other sections of the ordinance ''accessory buildings'' are limited to one story in height and to certain areas. The accessories which are allowed are clearly those structures which are defined as such in the ordinance, and plaintiff's business of accountancy would not fall within that classification. Furthermore, we do not understand the ordinance to mean that even if the conduct of plaintiff's business in connection with the hotel business is not prohibited it would nevertheless be allowed as a business activity apart from the conduct of the hotel business; and there is no contention that plaintiff's business is in any respect allied with the business of any hotel, apartment or club building or business.

The court failed to make findings with respect to any of the facts sought to be proved by the evidence which was excluded and which we have already discussed. For the reasons which we have stated as lending support to the rulings complained of, it follows that the facts as to which the court failed to find were not addressed to material issues and that there was no necessity for findings thereon.

The finding that the character of plaintiff's property is now and for many years last past has been residential was a sufficient determination of the claim of plaintiff that the property, while originally residential in character, has become essentially business in character; no more specific finding was necessary.

The judgment is affirmed.

Schauer, P. J., and Wood (Parker), J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 20, 1942.