Charles ETHEREDGE, on his own behalf
and on the behalf of all others sim-
ilarly situated, Petitioner,

v.

Lois BRADLEY, Clerk of the District Court
for the State of Alaska, Third Ju-
dicial District, Respondent.

No. 1399.

Supreme Court of Alaska.

Feb. 8, 1971.

G. E. Stein, Alaska Legal Services Corp.,
Anchorage, for petitioner.

G. Kent Edwards, Atty. Gen., Juneau,
B. Richard Edwards, Asst. Atty. Gen.,
Anchorage, for respondent.

## OPINION

Before BONEY, C. J., and DIMOND,
RABINOWITZ, CONNOR and ERWIN,
JJ.

ERWIN, Justice.

This is a petition for review of an interlocutory order issued by Judge Moody on October 28, 1970. It arises out of a class action against Lois Bradley in her capacity as Clerk of the District Court, in which plaintiff alleges that Alaska Civil Rules 88 and 89, which prescribe certain procedures followed by defendant and others in prejudgment attachments and seizures of property, are unconstitutional under the rule of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

In a separate action brought by one of his creditors, Etheredge's bank account, which he claims consisted entirely of monies paid to him as wages, was attached. No notice was given him of this attachment, nor was any hearing held. Etheredge therefore brought this action to enjoin the enforcement of Rules 88 and 89, and for a declaratory judgment of their unconstitutionality, on his own behalf and on the behalf of all others similarly situated.

The State of Alaska filed a motion to require Etheredge to post a cost bond as required by AS 09.50.260 in "an action against the state." The motion was granted, and Judge Moody issued the above-mentioned order, by which Etheredge was required to post a $750 bond, and further proceedings were stayed until the bond was filed.

Etheredge argues that AS 09.50.260 does not apply to him in this case for two reasons: (1) § 260 applies only to actions brought under the section immediately preceding, § 250; the case at bar is not such an action. (2) § 260 applies by its terms only to "an action against the state"; this is not such an action.

## SHOULD REVIEW BE GRANTED

■ The initial problem posed by this case is whether review should be granted of the interlocutory order of the trial court. An examination of this case convinces us that the problem poses an important question of law which demands an immediate answer under both Supreme Court Rules 23 and 24.[1]

The order in effect deprives a substantial portion of our society of the right to challenge unconstitutional actions of state officers and may terminate their legal redress for the sole reason of indigency. A delay in determining the legality of this order will serve to chill criticism of action by public officers in other cases [2] and may perpetuate the very conduct questioned in this case, without an opportunity to obtain a determination of the constitutional question presented.[3] Unless petitioner is afforded a remedy, the questioned conduct of wage attachment without notice or prior hearing will continue unchecked, because it is required by the Rules of Civil Procedure.

## THE MERITS

■ The petitioner is correct in his belief that AS 09.50.260 does not apply to him, and both of the arguments which he advances in support of that proposition are true. With respect to the first, the present statute [4] does not require a bond in a case to prohibit unconstitutional action by a public official or to challenge the constitutionality of a statute or rule. The original stat-

---

1. It appears in this case that the requirements of Sup.Ct.R. 24(1), (2) and (3) are all present herein.

2. The State of Alaska in its brief has cited two additional cases recently where the Superior Court has ordered a bond filed in actions to contest unconstitutional actions of various state officials.

3. *Cf.* Hanby v. State, Alaska, 479 P.2d 486; Levi v. Sexton, 439 P.2d 423 (Alaska 1968); State v. Hillstrand, 352 P.2d 633 (Alaska 1960); City of Fairbanks v. Schaible, 352 P.2d 129 (Alaska 1960).

4. AS 09.50.250–09.50.300.

ute was quite broad in form.[5] It was amended in 1965 [6] to provide as follows:

> Sec. 09.50.250. Actionable claims against the state. A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court. A person who may present his claim under AS 44.77.010–44.77.060 may not bring an action under this section except as set out in AS 44.77.040(c). However, no action may be brought under this section if the claim * * *.

Section 260 requiring a bond refers to Section 250 which refers to persons having a contract, quasi-contract or tort action against the state. There is nothing said about requiring a bond by persons having actions against particular state officials because of unconstitutional actions or to test the constitutionality of a statute or rule. We find the absence of specific limitation as to these actions controlling in the present case. [7]

■ Additionally, the rule is well established that an action to enjoin a state officer from enforcing a statute or regulation which is alleged to be unconstitutional is not an action against the state for the purpose of sovereign immunity,[8] nor is an officer acting unconstitutionally acting "by authority of the state." [9] Further, it has been established that suits to enjoin the actions of state officers can be brought in the area where the act occurs rather than in the state capital under statutes requiring any suit against the state to be brought in the court

---

5. Ch. 101, SLA 1962, sections 26.01 to 26.-06, which were codified as AS 09.50.250, provided as follows:

   > Article XXVI. Tort Claims Against State
   >
   > Sec. 26.01. Actionable Claims against the State. Any person or corporation having a claim against the state may bring an action against the state in the superior court. However, no action may be brought under this section if the claim * * *.

6. Chapter 30, SLA 1965.

7. The amendment to the statute was introduced by the Senate Judiciary Committee in response to questions raised by this court in Wright Truck & Tractor Service, Inc. v. State, 398 P.2d 216 (Alaska 1965) in order to specifically spell out "exactly what claims could be brought against the state under these sections [AS 09.50.250–.300]." 1965 House Journal 313.

8. The leading federal case on the subject appears to be Ex parte Young, 209 U.S. 123, 159–60, 28 S.Ct. 441, 454, 52 L. Ed. 714, 729 (1908), in which the court stated:

   > The answer to all this is the same as made in every case where an official claims to be acting under the authority of the state. The act to be enforced is alleged to be unconstitutional; and if it be so, the use of the name of the state to enforce an unconstitution-al act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the state in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting, by the use of the name of the state, to enforce a legislative enactment which is void because unconstitutional. If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

   A 1926 annotation on the subject at 43 A.L.R. 408 cites cases from 14 jurisdictions in support of this general rule; the federal citations alone occupy approximately two full columns of print, commencing with Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738, 6 L. Ed. 204 (1824).

9. Century Distilling Co. v. Defenbach, 61 Idaho 192, 99 P.2d 56, 59 (1940); Stockton v. Morris & Pierce, 172 Tenn. 197, 110 S.W.2d 480, 482 (1937); Wisconsin Fertilizer Ass'n v. Karns, 39 Wis.2d 95, 158 N.W.2d 294, 296–97 (1968).

of the county where each capital is located.[10]

It thus clearly appears from the allegations of the complaint and the nature of this particular action that this is not an action against the state and would not come within the purview of any statute requiring a bond to be filed in actions against the state.

The order of the Superior Court requiring the filing of a bond is reversed and the case is remanded to the Superior Court with instructions to dissolve the stay order and to consider the case on the merits.

10. In State ex rel. Robinson v. Superior Court, 82 Wash. 277, 46 P.2d 1046 (1935), it was held that a suit to enjoin the State Director of Agriculture from enforcing regulations promulgated under an unconstitutional statute was not an action against the state, and thus need not be brought in Thurston County, the seat of state government. In support of this conclusion, the court cited at page 1048 a number of sovereign immunity cases, leading off with Ex parte Young, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714, 729 (1908). Accord, Wiegardt v. Brennan, 192 Wash. 529, 73 P. 2d 1330, 1331 (1937) (statute regulating clam digging alleged unconstitutional; suit against director of fisheries). Some of the cases indicate that the dividing line is the point at which the state, if the judgment is adverse, would be substantially affected rather than the particular officer. State ex rel. Fleming v. Cohn, 12 Wash.2d 415, 121 P.2d 954, 958 (1942). See also Deaconess Hospital v. State Highway Comm'n, 66 Wash.2d 378, 403 P.2d 54 (1965) for an explanation of where the state rather than its officers and agents might be the proper party.